**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**ANGELA OWENS**                                                                                           **PLAINTIFF**

**V.**                                              **4:06CV573**

**ALLTEL COMMUNICATIONS INC.**                                             **DEFENDANT**

<u>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**</u>

Pending is Defendant's Second Motion for Summary Judgment as to Plaintiff's Title VII and Section 1981 claims for retaliation and race discrimination. For the reasons set forth below, the Motion is GRANTED.

<u>Facts</u>

Plaintiff Angela Owens is an African-American female. She began working for the Defendant Alltel on June 28, 1998 as an Output Processing Operator I at the Defendant's Output Processing Center ("OPC") in Little Rock. The Output Processing Operator, or insert operator, is responsible for processing mail through a mail processing machine, including set-up and maintenance of the machine. The Output Processing Specialist position is a promotion from the Output Processing Operator position. The only difference in the requirements of a Specialist is the expectation of a higher production rate and higher mechanical and repair skills. (Pl. Dep. P. 28-29; Job Description, Ex. 4 to Def's Mot. For Summ. Judg.).

There are two day-shift teams of Output Processing Operators and Production Specialists and two night-shift teams. Both report to shift supervisors. The day-shift supervisors report to the floor supervisor, Rick Burks. Mr. Burks reports to the Processing Manager, Darren Johnson. (Johnson Aff., Ex. 3). At all relevant times, Plaintiff was a member of Team 11D on the day shift and worked four ten-hour days from 8:00 a.m. until 7:00 p.m., typically on Sunday, Monday,

Tuesday and Thursday. Until November 2005, Plaintiff's shift supervisor was Rob Gee. Mr. Gee was replaced in 2005 by Mike Compton, who continues to supervise Plaintiff.

The OPC receives bills from corporate Alltel in Wilkes-Barre, Pennsylvania and Twinsburg, Ohio through fiberoptic lines. The OPC printers print the bills, and the insert operators and production specialists are responsible for processing the mailing. Large mail pieces which come into the OPC cannot be processed by machine and are inserted manually. The employees refer to this as working in heavies. (Owens Dep., p. 77). The shift supervisors assign insert operators to work in heavies on a rotating basis. The manual method is a slower process, consequently resulting in lower production numbers.

Alltel records the number of mail pieces processed for each insert operator and production is posted monthly. (Pl. Dep. P. 37; Burks Dep. P. 48). To compensate for the lower production numbers while assigned to a day in heavies, the insert operator is given credit that day for his past months average daily production. (Burks Dep., p. 59; Johnson Aff. Ex. 3). Since 1998, Plaintiff has consistently ranked at or near the bottom of the daily production numbers, and consequently, the six month average production numbers. (Johnson Aff., Ex. 3). Plaintiff was at the bottom of the productivity matrix compared to her peers for all of 2005 and most months during the time Mike Compton was her supervisor. (Performance Review, Ex. 9; Pl. Dep. P. 64; Compton Dep. P. 72). The charts showing six-month averages through August 31, 2005, December 31, 2005, and May 31, 2006 show Plaintiff as either last or next to last in each period. (Charts, Ex. 10).

In 1994, Alltel instituted a Team Based Incentive Plan ("TBIP") to reward OPC employees for productivity. (Johnson Aff., Ex. 3). Under the TBIP, an eligible insert operator may earn up to 12% of his hourly rate, depending on whether productivity goals are met. Eligible employees are

those who have completed the six-month operator training and have not been rated unacceptable, or below performance expectations. (Team Based Incentive Plan, Ex. 11). An employee's TBIP payout percentage is reduced any time his or her performance goals are not met. (Johnson Aff., Ex. 3).

On January 20, 2005 as Plaintiff was preparing to leave work, her co-worker Greg Tucker kicked her. The nature and severity of the kick are disputed. The fact that Mr. Tucker kicked Plaintiff is not disputed. Plaintiff told her co-worker Lena Robinson about it on January 25, 2005. Robinson reported the incident to the night floor supervisor, Dale Lewis, the following day. Lewis talked to Plaintiff about the incident upon her return January 27, 2005. Lewis reported the incident to Darren Johnson. Johnson disciplined Tucker after consulting with Alltel's Human Resources Department. (Johnson Dep. P.67). Plaintiff sought medical attention and, at her doctor's direction, was placed on light duty in the heavies where employees can sit while working.

Plaintiff filed a charge of discrimination with the EEOC on March 8, 2005 alleging that Alltel failed to take appropriate action in response to the Tucker incident. Plaintiff took medical leave beginning March 16, 2005 and returned to work June 13, 2005 on light duty in the heavies per her doctor's instructions. Plaintiff remained on light duty for approximately six weeks. Thereafter, Plaintiff returned to the floor and earned the full incentive payout in August and September 2005. On October 21, 2005, Plaintiff's percentage payout was reduced from 12% to 7% because her previous 90-day average did not meet the minimum requirements. Plaintiff was reinstated to the full 12% payout for the November 2005 incentive period based on a spike in her October productivity.

On November 16, 2005 Plaintiff filed a second charge of discrimination with the EEOC

alleging that the 5% reduction in her TBIP bonus was in retaliation for her having filed the March EEOC charge and that Alltel further retaliated by failing to assign her to preferred jobs.  On May 12, 2006, Plaintiff filed her complaint against Alltel and Greg Tucker alleging discriminatory and retaliatory treatment in violation of Title VII and § 1981 and common law tort claims of negligent supervision and outrage.  The tort of outrage and the Title VII claims as to Defendant Tucker and the tort of outrage and negligent supervision claims against Alltel have been dismissed.

## Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds.  *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987);  Fed. R. Civ. P. 56.  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979).  The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain

> such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

### Discussion of the Law

<u>First Charge of Discrimination</u>

In her first Charge, Plaintiff alleged she had been discriminated against based upon her race and sex and in retaliation for complaining about the Tucker incident. Plaintiff claimed she was physically injured, humiliated, harassed and subjected to a hostile work environment. In order to establish a prima facie case of race or gender discrimination, Plaintiff must show she (1) was a member of a protected class, (2) was qualified to perform her job, (3) suffered an adverse employment action, and (4) was treated differently from similarly-situated non-class member employees. *Thomas v. Corwin,* 483 F.3d 516, 529 -530 (8th Cir. 2007)(citing *Hesse v. Avis Rent A Car Sys., Inc*., 394 F.3d 624, 631 (8th Cir.2005)). Because Plaintiff fails to present direct evidence of discrimination, the Court analyzes her claim under the *McDonnell Douglas* analytical framework.

Plaintiff has shown that she is a member of a protected class and was qualified to do her job. However, Plaintiff has failed to show any adverse employment action resulting from Alltel's

handling of the Tucker incident.   Plaintiff has also failed to provide any evidence that similarly situated non-class members were treated more favorably than Plaintiff following such an incident.

Further, a "hostile work environment 'is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment' as viewed objectively by a reasonable person." *Id.* (citing *Tademe v. Saint Cloud State Univ*., 328 F.3d 982, 991 (8th Cir.2003)). "To be actionable, the conduct complained of must be extreme in nature and not merely rude or unpleasant." *Nitsche v. CEO of Osage Valley Elec. Coop*., 446 F.3d 841, 846 (8th Cir.2006). "Allegations of a few isolated or sporadic incidents will not suffice; rather, the plaintiff must demonstrate the alleged harassment was 'so intimidating, offensive, or hostile that it poisoned the work environment.' " *Id.* (quoting *Tuggle v. Mangan*, 348 F.3d 714, 720 (8th Cir.2003)).

The incidents which Plaintiff complains of are not "sufficiently severe or pervasive" to create a cause of action for hostile work environment under Title VII. *Singletary v. Mo. Department of Correction*s, 423 F.3d 886, 892-93 (finding job environs where the plaintiff had second-hand knowledge his co-workers and some managers referred to him as a "nigger" and where his vehicle had been vandalized on several occasions not objectively severe and pervasive); *Bainbridge v. Loffredo Gardens, Inc*., 378 F.3d 756, 759 (8th Cir.2004)(six instances of racially derogatory language from managers and coworkers over the course of a year and a half, together with burning cross graffiti, did not render the workplace objectively hostile.)  Accordingly, the Court finds that Defendant's Motion for Summary Judgment should be GRANTED as to these claims.

Second Charge of Discrimination

Plaintiff claims that Alltel retaliated against her after she "protested discrimination in her terms and conditions of employment," including job assignments and opportunities for promotion. Plaintiff specifically contends that she sought a promotion in December 2004 to production specialist which she did not receive, had her bonuses reduced and withheld in 2005 and 2006, did not receive a merit pay raise in 2006 and 2007 and was placed on a performance improvement plan in February 2006 and February 2007.

Regarding Plaintiff's failure to promote claim, she has failed to provide any evidence that she applied for and was denied a promotion in December 2004. There was a promotion given in February 2005 to Timmy Brunetti, a white male, who had been with Alltel for 23 years. However, Alltel promoted Mr. Brunetti based upon his production and years of service. Plaintiff did not have the same years of service as Mr. Brunetti or the high production numbers.

It is undisputed that Plaintiff's TBIP bonus was reduced in 2005 and 2006. Further, she did not receive a merit pay raise in 2006 and 2007 and was placed on a performance improvement plans.

To establish a prima facie case of retaliation, Plaintiff must demonstrate (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action. *See Box v. Principi*, 442 F.3d 692, 696 (8th Cir.2006) (citation omitted). Again, because Plaintiff presented no direct evidence of retaliation, we analyze her claim pursuant to the McDonnell Douglas burden-shifting analysis.

The Court assumes that Plaintiff has presented enough evidence to establish the first two

prongs of the analysis.  The third prong, the causal connection between Plaintiff's protected conduct and the adverse employment action, is troublesome, however.  To prove a causal connection, Plaintiff must demonstrate the Defendant's "retaliatory motive played a part in the adverse employment action." *Kipp v. Mo. Highway & Transp. Comm'n*, 280 F.3d 893, 896-97 (8th Cir.2002) (quotation omitted). Evidence giving rise to an inference of retaliatory motive on the part of the employer is sufficient to establish the requisite causal link. *Id.* at 897. "An inference of a causal connection between [protected conduct] and [an adverse employment action] can be drawn from the timing of the two events, but in general more than a temporal connection is required to present a genuine factual issue on retaliation." *Wallace v. DTG Operations, Inc*., 442 F.3d 1112, 1119 (8th Cir.2006) (citation omitted).

     Plaintiff has provided no concrete evidence beyond her own conclusory allegations in support of her assertion that she was retaliated against because she complained about disparate treatment or that she was treated unfairly because of her race or sex.  Such skeletal allegations, unsupported with specific facts or evidence, are insufficient to create a genuine issue of fact so as to preclude granting summary judgment.  There is evidence that one other African American employee has complained that she did not receive favorable job assignments because of her race.  However, this one complaint without more is insufficient to create an inference of discrimination.  Moreover, there is no temporal proximity between Plaintiff's protected conduct and any adverse employment action.  *See Shanklin v. Fitzgerald,* 397 F.3d 596, 604 (8th Cir. 2005).

     Even if the Court were to find Plaintiff had made a prima facie case, Alltel has articulated a legitimate business reason for the decisions made regarding Plaintiff's bonuses, raises, and performance.  Alltel has provided evidence supporting its claim that Plaintiff was a low performer

in her department. Plaintiff has not provided any evidence to dispute these production numbers. Thus, the defendants are entitled to summary judgment on Plaintiff's retaliation claim.

For these reasons, Defendant's Second Motion for Summary Judgment (Docket # 25) is GRANTED. The Clerk is directed to close the case.

IT IS SO ORDERED this 4th day of June 2007.

*James M. Moody*
United States District Judge